1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                ----oo0oo----

11

12   TERRY L. HOPKINS,                    NO. CIV. 2:13-00444 WBS JFM

13            Plaintiff,
                                          MEMORANDUM AND ORDER RE:
14       v.                               MOTION TO DISMISS OR, IN THE
                                          ALTERNATIVE, STRIKE
15   WELLS FARGO BANK, N.A., and
     DOES 1-10,
16
              Defendants.
17   _____/

18

19

20                                ----oo0oo----

21            Plaintiff Terry Hopkins brings this action against

22   defendants Wells Fargo, N.A., and Does one through ten arising

23   from the allegedly wrongful foreclosure of her property.  Wells

24   Fargo, N.A. ("defendant"), now moves to dismiss the Complaint for

25   failure to state a claim upon which relief can be granted

26   pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant

27   also moves to strike plaintiff's request for punitive and

28   emotional distress damages, as well as her request for treble

                                     1

damages, attorney's fees, and costs under the California Penal Code pursuant to Rule 12(f).

I.    Factual Background

On September 7, 2007, plaintiff obtained a mortgage loan for $714,000, secured by the property located at 1949 Rockville Road in Fairfield, California (the "property"), and memorialized by a note and deed of trust.[1] (Notice of Removal Ex. A ("Compl.") ¶¶ 1, 3, 16 (Docket No. 1-1); see Req. for Judicial Notice ("RJN") Ex. 1 ("Deed of Trust") (Docket No. 6-1).) The deed of trust required that plaintiff maintain hazard insurance for the property, including coverage for fire. (Compl. ¶ 5; Deed of Trust § 5 ¶ 4.) It also provided that should the

---

[1]    Defendant requests judicial notice of copies of the following documents: Deed of Trust, Notice of Default and Election to Sell Under Deed of Trust, Substitution of Trustee, Notice of Trustee's Sale, Trustee's Deed Upon Sale, Complaint for Unlawful Detainer After Trust Deed Foreclosure in the lawsuit captioned Well Fargo Bank, NA v. Kristina Nabon, et al. ("Nabon"), Demurrer filed in Nabon, Notice of Entry of Order Overruling Defendant's Demurrer to Complaint filed in Nabon, Answer filed by Hopkins in Nabon, Judgment entered in Nabon, and Writ of Possession filed in Nabon. (RJN Exs. 1-11.)

A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Plaintiff does not oppose defendant's request for judicial notice for the purposes for which the court is taking notice. (Opp'n at 14 (Docket No. 9).) All the documents offered by defendant are public records or court documents and the court properly takes judicial notice of them. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of matters of public record); United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) ("[T]he authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable . . . .").

The court did not rely on any of the documents that defendant included in its second request for judicial notice. It therefore need not decide whether those documents may be judicially noticed.

property be damaged or destroyed, defendant could elect "in its
sole and absolute discretion, regardless of any impairment or
lack of impairment of security," to contribute any resulting
insurance proceeds to plaintiff's debt and/or the costs of
repairing the property.  (Deed of Trust § 5 ¶ 4; see Compl. ¶
10.)  Plaintiff obtained a policy of hazard insurance and named
defendant as the loss payee.  (Compl. ¶ 6.)

        At some point after the closing, a double-wide modular
home situated on the property was destroyed by fire.  (Id. ¶ 7.)
Plaintiff received insurance proceeds of $268,000, which she
endorsed to defendant.  (Id. ¶¶ 8-9.)  Defendant then allegedly
released one-third of those proceeds to repair the damaged
modular home.  (Id. ¶ 12.)

        Plaintiff alleges that she notified defendant on
October 15, 2009, that she was able to replace the modular home
with another "of the same or better quality," but that defendant
refused to provide her with any more funds for such a purpose.
(Id. ¶ 14.)  She alleges that defendant required that she use the
insurance proceeds to build a conventional dwelling on the
property or not receive any more of the proceeds.  (Id. ¶ 37.)
Thereafter, defendant allegedly applied the remainder of the
insurance proceeds to the unpaid balance of plaintiff's mortgage.
(Id. ¶ 29.)

        On August 30, 2009, a Notice of Default and Election to
Sell was recorded, which indicated that plaintiff was in default
on her mortgage in the amount of $39,970.06 as of June 29, 2009.
(RJN Ex. 2.)  On October 23, 2009, a Notice of Trustee's Sale was
recorded.  (Id. Ex. 4.)  On June 18, 2010, defendant purchased

3

1   the property at public auction, and on July 12, 2010, a Trustee's

2   Deed Upon Sale was recorded.  (Id. Ex. 5; Compl. ¶ 16.)

3        After the sale, defendant initiated an unlawful

4   detainer action regarding the property on October 8, 2010.  (RJN

5   Ex. 6; Compl. ¶ 32.)  The court entered a Judgment After Trial in

6   favor of defendant on December 21, 2010, and plaintiff was

7   allegedly then evicted.  (See RJN Ex. 10; Compl. ¶ 32.)

8        Plaintiff filed this action on January 29, 2013, in

9   Solano County Superior Court.  (Compl. ¶¶ 1, 16.)  Defendant

10  removed the action to this court on March 5, 2013, invoking the

11  court's diversity jurisdiction.[2]  (Notice of Removal ¶¶ 5-6

12

13        [2]   Although the issue was not raised by either party, the
14  court questioned whether it properly exercises jurisdiction over
    this case.  The court requested supplemental briefing on the
15  issue of whether for purposes of 28 U.S.C. § 1348, a bank is
    "located" only in the state where it has its main office, or also
16  where it maintains a principal place of business.  Compare Grace
    v. Wells Fargo Bank, N.A., --- F. Supp. 2d ----, 2013 WL 663169,
17  at *4 (S.D. Cal. 2013) (holding that a bank is located both where
    it has its main office and the state where its principal place of
18  business is located); Taheny v. Wells Fargo Bank, N.A., 878 F.
    Supp. 2d 1093, 1109 (E.D. Cal. 2012) (same); Gosal v. Wells Fargo
19  Bank, N.A., Civ. No. 2:12-02024, 2012 WL 4961696, at *1 (E.D.
    Cal. Oct. 15, 2012) (adopting the reasoning of Taheny), with
20  Mireles v. Wells Fargo Bank, N.A., 845 F. Supp. 2d 1034, 1061
    (C.D. Cal. 2012) (holding that a bank is only a citizen of the
21  state where its main office is located); Marzette v. Provident
    Sav. Bank, F.S.B., Civ No. 2:11-2089, 2011 WL 5513556, at *2
22  (E.D. Cal. Nov. 10, 2011) (same); Tse v. Wells Fargo Bank, N.A.,
    Civ. No. 10-4441, 2011 WL 175520, at *2 (N.D. Cal. Jan. 19, 2011)
23  ("[T]he test for a national bank's citizenship under section 1348
    is determined solely by the location of its main office
24  designated in its articles of association.").
         Defendant informed the court that this issue is
25  currently pending before the Ninth Circuit in the case captioned
    Rouse v. Wachovia Mortgage, FSB, case no. 12-55278.  On December
26  25, 2012, the Ninth Circuit issued a letter to appellees Robert
    and Victoria Rouse for failure to file an answering brief, and no
27  further action in the case has occurred since then.  (See 12-
    55278 Docket No. 17.)  In her supplemental briefing, plaintiff
28  argued that this case should be remanded to state court.
    However, she made no motion to do so.  As the Rouse appeal

1   (Docket No. 1).)  Plaintiff brings four claims: (1) breach of

2   contract, (2) wrongful foreclosure, (3) conversion, and (4)

3   wrongful eviction, as well as a request for declaratory relief.

4   Defendant now moves to dismiss the Complaint for failure to state

5   a claim upon which relief can be granted pursuant to Rule

6   12(b)(6).  (Docket No. 5.)  Defendant also moves to strike

7   plaintiff's request for punitive and emotional distress damages,

8   as well as her request for treble damages, attorney's fees, and

9   costs under the California Penal Code pursuant to Rule 12(f).

10  (Id.)

11  II.  Legal Standards

12          To survive a motion to dismiss, a plaintiff must plead

13  "only enough facts to state a claim to relief that is plausible

14  on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

15  (2007).  This "plausibility standard," however, "asks for more

16  than a sheer possibility that a defendant has acted unlawfully,"

17  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a

18  complaint pleads facts that are 'merely consistent with' a

19  defendant's liability, it 'stops short of the line between

20  possibility and plausibility of entitlement to relief.'"  Id.

21  (quoting Twombly, 550 U.S. at 557).  In deciding whether a

22  plaintiff has stated a claim, the court must accept the

23  allegations in the complaint as true and draw all reasonable

24  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

25  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

26

27  appears to be dormant for the immediate future and no motion to
    remand has been made by plaintiff, the court declines to sua

28  sponte decide the unsettled issue of where a bank is "located"
    for § 1348 purposes.

1  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

2  (1972).

3       Pursuant to Rule 12(f), the court may "strike from a

4  pleading an insufficient defense or any redundant, immaterial,

5  impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A

6  motion to strike "should not be granted unless it is clear that

7  the matter to be stricken could have no possible bearing on the

8  subject matter of the litigation."  Lilley v. Charren, 936 F.

9  Supp. 708, 713 (N.D. Cal. 1996).  However, "Rule 12(f) does not

10  authorize district courts to strike claims for damages on the

11  ground that such claims are precluded as a matter of law."

12  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th

13  Cir. 2010).

14  III.  Analysis

15       A.   Home Owners Loan Act Preemption

16       Under the Home Owners Loan Act ("HOLA"), the Office of

17  Thrift Supervision ("OTS") received the authority to issue

18  regulations governing federal savings associations.  12 U.S.C. §

19  1464; Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th

20  Cir. 2008).  With that authority, the OTS promulgated a

21  preemption regulation intended to occupy the "entire field of

22  lending regulation for federal savings associations."  12 C.F.R.

23  § 560.2(a).  Defendant does not contend that it is a federal

24  savings association, but instead argues that "'as

25  successor-in-interest to World Savings Bank, a federal savings

26  bank and the loan originator, [d]efendant will be treated as such

27  for the purposes of preemption under HOLA.'"  (Mem. in Supp. at

28  7:5-7 (quoting Casas v. Wells Fargo Bank N.A., Civ No.

5:12-01742-EJD, 2012 WL 5877641, at *3 (N.D. Cal. Nov. 20, 2012))
(Docket No. 5); see also Reply at 1:18-2:2 (Docket No. 11).)
District courts in the Ninth Circuit have held that HOLA applies
to the successors of federal savings associations, including
defendant in particular.  See, e.g., Plastino v. Wells Fargo
Bank, 873 F. Supp. 2d 1179, 1184 n.3 (N.D. Cal. 2012) ("Indeed,
HOLA has previously been found to apply to Wells Fargo
post-merger."); DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d
1119, 1126 (N.D. Cal. 2010); Appling v. Wachovia Mortg., FSB, 745
F. Supp. 2d 961, 971 (N.D. Cal. 2010) ("[A]lthough Wells Fargo
itself is not subject to HOLA and OTS regulations, this action is
nonetheless governed by HOLA because Plaintiff's loan originated
with a federal savings bank and was therefore subject to the
requirements set forth in HOLA and OTS regulations.").

On the other hand, one court has observed that as
authority for this proposition, courts generally "cite either (a)
nothing, (b) each other, or (c) generic statements of law about
corporations succeeding to the rights of the entities they
acquire."  Gerber v. Wells Fargo Bank, N.A., Civ. No.
11-01083-PHX-NVW, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012).
That court further explained: "[P]reemption is not some sort of
asset that can be bargained, sold, or transferred.  HOLA
preemption was created by the OTS for the benefit of federal
savings associations, and § 560.2 plainly seeks to avoid
burdening the operations of federal savings associations."  Id.

Finding such arguments persuasive, other district
courts have begun to question the applicability of HOLA
preemption to institutions, like defendant, which are merely

successors to federal savings associations, especially where the actions the plaintiff complains of occurred after succession of the non-HOLA governed institution.  See, e.g., Rodriguez v. U.S. Bank Nat. Ass'n, Civ. No. 12-00989 WHA, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012) ("This Court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred."); Valtierra v. Wells Fargo Bank, N.A., Civ. No. 1:10-0849, 2011 WL 590596, *4 (E.D. Cal. Feb. 10, 2011) (Ishii, J.) ("Other cases have looked to see whether the alleged violations took place when the banking entity was covered by HOLA. . . .  This rule appears to be the best supported."); Taguinod v. World Sav. Bank, FSB, 755 F. Supp. 2d 1064, 1068 (C.D. Cal. 2010) ("Wells Fargo's acquisition of World Savings Bank, FSB does not affect the HOLA preemption defense because the Complaint only addresses the transaction between Plaintiffs and World Savings Bank, FSB.").

Defendant has not made the threshold showing that it may assert a HOLA preemption defense in this case.  Defendant does no more than provide a one-sentence explanation stating that as successor-in-interest to World Savings Bank ("WSB"), which originated plaintiff's loan, it is treated as a federal savings bank for purposes of HOLA preemption.  (Mem. in Supp. at 7:4-9; see also Reply at 1:18-2:2.)  Because the allegations supporting plaintiff's claims in this case occurred after defendant became the successor-in-interest to WSB in 2009, the court finds that, at least in this stage of the proceedings, defendant may not assert HOLA preemption.

     B.   <u>Wrongful Foreclosure and Wrongful Eviction</u>

In a diversity action, a federal court must apply the preclusion rules of the forum state. Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008); Bates v. Union Oil Co. of Cal., 944 F.2d 647, 649 (9th Cir. 1991). "Thus, to determine the preclusive effect of [a] California state court decision, we apply California law." Kay v. City of Rancho Palos Verdes, 504 F.3d 803, 808 (9th Cir. 2007). In California, res judicata, also known as claim preclusion, "describes the preclusive effect of a final judgment on the merits." Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896 (2002). It prevents, after a final judgment on the merits, the "relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." Id.

To determine whether res judicata bars a claim, California courts follow the primary rights doctrine. Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1031 (9th Cir. 2005). It provides:

> [A] "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

Mycogen Corp., 28 Cal. 4th at 904 (internal quotation marks and alterations omitted). "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." Id. at 897. "'[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the

plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009) (alteration in original) (quoting Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174 (4th Dist. 1983)).

The issue before the court is whether the unlawful detainer action brought by defendant in state court involves the same primary right as the present case.  An unlawful detainer action often has very limited res judicata effect because it is generally limited to resolution of the question of immediate possession.  Vella v. Hudgins, 20 Cal. 3d 251, 255 (1997); Malkoskie v. Option One Mortg. Corp., 188 Cal. App. 4th 968, 973 (2d Dist. 2010).  There is "a narrow and sharply focused examination of title," however, when an unlawful detainer action is filed pursuant to California Code of Civil Procedure section 1161a because the party bringing the action must show that the property at issue has been sold in accordance with California Civil Code section 2924, under a power of sale contained in a deed of trust, and the title under the sale has been duly perfected.  Vella, 20 Cal. 3d at 255; Malkoskie, 188 Cal. App. 4th at 973.  Thus, in Malkoskie, after one of the plaintiffs became delinquent on her loan, which was secured by a note and deed of trust recorded against the property purchased with the loan, the defendant Wells Fargo Bank ("Wells Fargo") acquired the property at a trustee's sale and filed an unlawful detainer action against both plaintiffs under section 1161a.  Malkoskie, 188 Cal. App. 4th at 971-72.  The plaintiffs argued that the

1  foreclosure sale was invalid due to improper notice and because

2  of other "irregularities in the sale."  Id. at 972.  The parties

3  agreed to a stipulated judgment in Wells Fargo's favor and the

4  plaintiffs were forcibly evicted.  Id.

5          The plaintiffs in that case later brought a civil

6  lawsuit against the beneficiary of the deed of trust and Wells

7  Fargo, among others, for claims including quiet title, wrongful

8  foreclosure, and wrongful eviction.  Id.  The California Court of

9  Appeal upheld the trial court's grant of defendants' demurrer,

10 holding that the stipulated judgment in the related unlawful

11 detainer case was res judicata as to plaintiffs' claims in the

12 later civil action arising from the alleged invalidity of the

13 foreclosure sale.  Id. at 974.  The court explained that "because

14 the sole basis upon which Wells Fargo asserted its right to

15 possession of the property was its 'duly perfected' legal title

16 obtained in the nonjudicial foreclosure sale, the validity of

17 Wells Fargo's title had to be resolved in the unlawful detainer

18 action."  Id. at 974.

19         As in Malkoskie, the state court's judgment in

20 defendant's unlawful detainer action necessarily decided the

21 validity of its title because defendant's "sole basis" for

22 asserting its right to possession of the property was "its 'duly

23 perfected' legal title obtained in the nonjudicial foreclosure

24 sale."  Malkoskie, 188 Cal. App. 4th at 973; (see RJN Ex. 6 ¶¶ 6-

25 9).  In that action, defendant alleged that the property was sold

26 in accordance with section 2924, under a power of sale contained

27 in a deed of trust, and the title under the sale was duly

28 perfected.  (RJN Ex. 6 ¶¶ 6-9.)  Plaintiff bases her wrongful

foreclosure and wrongful eviction claims in this action on
allegations that defendant failed to comply with California Civil
Code sections 2923.5(a)(1) and (2) prior to the filing or
recording of its notice of default.  (Compl. ¶¶ 21-22, 24, 33.)
In other words, plaintiff bases those claims on the validity of
defendant's title.  Plaintiff's wrongful foreclosure and eviction
claims are thus based on the same primary right at issue in the
earlier unlawful detainer action, namely, the right to the
property.

        Plaintiff did not raise the exact issue of defendant's
alleged noncompliance with sections 2923.5(a)(1) and (2) as a
defense in the unlawful detainer action.  (See RJN Exs. 7, 9.)
But even so, res judicata bars litigation of any issue that could
have been raised in the prior action.  See Palomar Mobilehome
Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir.
1993) ("California, as most states, recognizes that the doctrine
of res judicata will bar not only claims actually litigated in a
prior proceeding, but also claims that could have been
litigated.").  As in Malkoskie, plaintiff's challenges to the
validity of the foreclosure sale could have been raised as a
defense in the unlawful detainer action.  The judgment entered in
that action therefore bars all claims by plaintiff in the current
case that challenge the propriety of the eviction and
foreclosure.  See Castle v. Mortg. Elec. Registration Sys., Inc.,
Civ. No. 11-00538, 2011 WL 3626560, at *4-9 (C.D. Cal. Aug. 16,
2011) (claims for wrongful eviction, wrongful foreclosure, quiet
title, and unfair business practices barred because concerned
same primary right adjudicated in unlawful detainer action, the

right to the property at issue); <u>Lai v. Quality Loan Serv. Corp.</u>, Civ. No. 10-2308, 2010 WL 3419179, at *4 (C.D. Cal. Aug. 26, 2010) (explaining that the issue of the irregularity of the foreclosure or execution sale is barred by a judgment in an unlawful detainer action); <u>Velasquez v. U.S. Bank Nat. Ass'n</u>, Civ. No. 09-1104, 2009 WL 1941807, at *2-3 (C.D. Cal. July 1, 2009) (quiet title claim based on allegations of irregularity in trustee's sale barred by prior unlawful detainer action).

Because plaintiff's claims for wrongful eviction and wrongful foreclosure are barred by res judicata, allowing plaintiff leave to amend these claims would be futile. Accordingly, plaintiff's claims for wrongful eviction and wrongful foreclosure must be dismissed with prejudice.[1]

C.   <u>Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

1.   <u>Breach of Contract</u>

To plead a claim for breach of contract under California law, plaintiff must allege facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." <u>Appling</u>, 745 F. Supp. 2d at 974 (quoting <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226, 1239 (5th Dist. 2008)).

Plaintiff's deed of trust expressly provides that as to

---

[1]   The court does not address defendant's issue preclusion or <u>Rooker-Feldman</u> arguments because it dismisses plaintiff's wrongful eviction and wrongful foreclosure claims on res judicata, or claim preclusion, grounds.

any insurance proceeds from loss or damage to the property:

> [At the defendant's] option and in the order and
> proportion as Lender may determine in its sole and
> absolute discretion, regardless of any impairment or lack
> of impairment of security, as follows: (A) to the extent
> allowed by applicable law, to the Sums Secured in a
> manner that Lender determines and/or (B) to the payment
> of costs and expenses of necessary repairs or to the
> restoration of the Property to a condition satisfactory
> to the Lender, such application to be made in the manner
> and at the time determined by the Lender.

(Deed of Trust § 4 ¶ 5.)  The "Sums Secured" includes the amounts

owed to defendant under the note and secured by the property.

(Id. §§ 1-2.)

　　　　Plaintiff alleges that "[a]pplicable law" at the time

of the events in the Complaint, particularly the case Schoolcraft

v. Ross, 81 Cal. App. 3d 75 (5th Dist. 1978), required defendant

to allow her to use the full amount of the insurance proceeds

from the fire at the property to repair the modular home there

regardless of contrary language in the deed of trust.  (See

Compl. ¶¶ 7-8, 11.)  She further alleges that even though she

notified defendant that she could replace the damaged modular

home on the property with one of the same or better quality,

defendant only gave her one-third of the insurance proceeds and

applied the remainder to her loan debt.  (Id. ¶¶ 12, 14.)

　　　　"[I]f defendants were given the right to do what they

did by the express provisions of the contract there can be no

breach."  Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2

Cal. 4th 342, 374 (1992) (internal quotation marks and citation

omitted).  In Gabana Gulf Distribution, Ltd. v. GAP International

Sales, Inc., Civ. No. 06-02584, 2008 WL 111223 (N.D. Cal. Jan. 9,

2008), aff'd, 343 Fed. App'x 258 (9th Cir. 2009), the plaintiff

complained that the defendant breached their contract by failing

14

1    to approve any of the proposed retailers the plaintiff submitted

2    for approval, but the court granted summary judgment in

3    defendant's favor on the breach of contract claim because the

4    contract gave the defendant "the right, in its sole discretion,

5    to approve, disapprove or cancel at any time any Distributor

6    customer and any retail store where any of Distributor's

7    customers propose to sell or have sold Authorized Goods."

8    Gabana, 2008 WL 111223, at *7.  Likewise, the deed of trust in

9    this case granted defendant the right to do exactly what

10   plaintiff alleges to be a breach of their contract: distribute

11   the insurance proceeds from plaintiff's hazard insurance policy

12   to pay down plaintiff's loan.  Whether Schoolcraft would

13   otherwise preclude defendant from withholding the money is

14   discussed below.

15        Plaintiff also alleges, however, that although she

16   intended to replace the modular home on her property, defendant

17   would not allow her to use the proceeds from her fire insurance

18   policy for repair purposes unless she built a conventional

19   dwelling on the property.  (Compl. ¶¶ 14, 33.)  There is no

20   provision in the deed of trust granting defendant the right to

21   put restrictions on how plaintiff repairs her property if

22   defendant allocates the proceeds for repair.

23        Plaintiff further alleges that because of her refusal

24   to build a conventional dwelling and defendant's resulting

25   withholding of the remainder of the insurance proceeds, she could

26   no longer rent out the property without a dwelling on it.  (Id. ¶

27   15.)  The rents she received were the source of her repayment of

28   the loan.  (Id.)  After defendant foreclosed on the deed of

15

trust, plaintiff also lost the equity in her home. (Id. ¶¶ 16-17.) These allegations are sufficient to state a claim for breach of contract. Accordingly, defendant's motion to dismiss plaintiff's breach of contract must be denied.

                2.   Breach of the Implied Covenant of Good Faith and Fair Dealing

       Although plaintiff has labeled her first claim for relief "Breach of Written Contract," she appears to also intend to bring a claim for breach of the implied covenant of good faith and fair dealing. On a 12(b)(6) motion, the court analyzes "'the underlying conduct which forms the basis of plaintiff['s] state law claims and not the label of the claims themselves to determine' whether plaintiff[] ha[s] stated a claim upon which relief can be granted." Newhouse v. Aurora Bank FSB, --- F. Supp. 2d ----, 2013 WL 85414, at *7 (E.D. Cal. Jan. 8, 2013) (Mueller, J.) (quoting Clancy v. Bay Area Bank, Civ. No. 97-0077, 1997 WL 182291, at *2 (N.D. Cal. Apr. 7, 1997)); see also Int'l Star Registry of Ill. v. ABC Radio Network, Inc., 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006) ("[F]or Rule 12(b)(6) purposes it does not matter whether [plaintiff] places any label--or even the wrong label--on the claim"). The court will therefore consider whether plaintiff may proceed under breach of the implied covenant theory as well.

       "'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma, 2 Cal. 4th at 371). "A typical formulation of the burden imposed by the implied covenant of good faith and fair

16

dealing is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'"  Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2d Dist. 2005) (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

In Schoolcraft, the plaintiffs purchased a home from one of the defendants and executed a promissory note secured by a deed of trust naming that defendant as beneficiary.  Schoolcraft, 81 Cal. App. 3d at 77-78.  As required by the deed of trust, the plaintiffs purchased a fire insurance policy, which allowed the defendant, as beneficiary, to apply any insurance proceeds "upon any indebtedness secured hereby . . . or at the option of the Beneficiary, the entire amount so collected or any part thereof may be released to Trustor."  Id. at 78.  After a fire destroyed the plaintiffs' home, they decided to rebuild it, but the defendant refused to permit the insurance proceeds to be used to rebuild.  Id.  Explaining that "the purpose of a deed of trust is that the borrower will have the funds loaned on specific terms and the lender will have the right to a specified repayment that is secured by the deed of trust," the Court of Appeal held that despite the discretion given the defendant in the deed of trust, the trial court did not err in finding that the implied covenant of good faith and fair dealing required the defendant to allow the insurance proceeds to be used to rebuild the home, so long as the security is not impaired.  Id. at 80-81.

Plaintiff contends that as in Schoolcraft, defendant's discretion under the deed of trust is constrained by the implied covenant of good faith and fair dealing.  (See Opp'n at 6-7.)

17

1   She also contends that defendant's alleged refusal to give

2   plaintiff the full amount of insurance proceeds to replace the

3   modular home constitutes a breach of that covenant.  (Id.)   In

4   response, defendant argues that the implied covenant cannot trump

5   an agreement's express language.  (See Mem. in Supp. at 13:5-7.)

6   Because the deed of trust grants it "sole and absolute

7   discretion" in choosing how to apply the insurance proceeds,

8   defendant argues that to conclude that its discretion might be

9   constrained by the implied convent would violate that principle.

10  (See id.)

11          As explained in Gabana Gulf Distribution, Ltd.,

12  "[t]here are two legal principles in some tension with each other

13  that are at play with respect to the breach of covenant" where,

14  as here, a contract gives one party discretion and the second

15  party accuses the first of abusing that discretion.  Gabana Gulf

16  Distribution, Ltd., 2008 WL 111223, at *7.  First, California

17  courts have noted that "[t]he covenant of good faith finds

18  particular application in situations where one party is invested

19  with a discretionary power affecting the rights of another.  Such

20  power must be exercised in good faith."  Carma, 2 Cal. 4th at

21  372.  Second, however, the implied covenant cannot "be read to

22  prohibit a party from doing that which is expressly permitted by

23  an agreement" because, "as a general matter, implied terms should

24  never be read to vary express terms."  Id. at 374.

25          California courts have resolved the tension between

26  these two propositions by "examining whether the contract gives

27  the defendant merely the power to exercise discretion, or whether

28  it gives the defendant the greater power to refrain from acting

18

at all," and declining to apply the covenant in situations where
the defendant has the power to refrain from acting altogether.
Gabana Gulf Distribution, Ltd., 2008 WL 111223, at *7 (citing
Locke v. Warner Bros., Inc., 57 Cal. App. 4th 354, 367 (2d Dist.
1997)).  In Vectren Communications Services v. City of Alameda,
Civ. No. 08-3137, 2009 WL 2566722 (N.D. Cal. Aug. 18, 2009), the
city of Alameda entered into a contract in which the plaintiff
agreed to design, build, and manage a telecom system.  Vectren,
2009 WL 2566722, at *1.  The contract specified several features
that had to be included in the system, and allowed the city "in
its sole discretion" to make additions to the system.  Id. at *4,
*6.  The plaintiff alleged that the city's refusal to add voice
service to the telecom system breached the implied covenant
because without voice service the profitability of the telecom
system decreased, which reduced the plaintiff's economic benefit
under the contract.  Id. at *6.  The court held that there could
be no breach of the implied covenant because the agreement
contained no requirement that voice service be provided and
"conferred complete discretion on the City to decide whether to
make any additions or modifications to the system . . . ."  Id.

Like the deed of trust in Schoolcraft and unlike the
contract in Vectren, the deed of trust here does not give
defendant the power to refrain from acting altogether.  Under the
deed of trust, defendant must apply the insurance proceeds,
although it is granted the "sole and absolute discretion" as to
whether those proceeds are applied to repair the property or pay
down plaintiff's outstanding debt.  Plaintiff would have recourse
if defendant declined to apply the insurance proceeds in

accordance with the options allowed by the deed of trust and instead, for example, simply kept the proceeds.  The discretion granted defendant by the deed of trust is therefore governed by the implied covenant.  See Gabana Gulf Distribution, Ltd., 2008 WL 111223, at *7.

This conclusion is not altered simply because defendant's discretion is broadly phrased as "sole and absolute." For example, even though the contract at issue in Gabana Gulf Distribution, Ltd. granted the defendant "sole discretion" over the plaintiff's proposed customers or retail store locations, the court found that plaintiff could proceed on a breach of the implied covenant theory because the defendant did not bargain for the right to refrain from approving all proposals altogether. Gabana Gulf Distribution, Ltd., 2008 WL 111223, at *8; cf. Steiner v. Thexton, 48 Cal. 4th 411, 419-20 (2010) (finding no implied covenant, but rather "unfettered power to withdraw at any time" from obligation to purchase land where contract gave party "absolute and sole discretion" to either terminate the real estate transaction or not at any time); Wolf v. Walt Disney Pictures & Television, 162 Cal. App. 4th 1107, 1122 (2d Dist. 2008) (declining to imply covenant to limit the defendant's "sole discretion" under contract where it gave the defendant the right to exercise or not exercise the right to grant third party licenses).

By alleging that defendant acted contrary to its contractual duties by allocating only one-third of the insurance proceeds to replace the modular home on the property rather than the entire amount, (Compl. ¶¶ 11-18), plaintiff has properly

alleged a claim for breach of the implied covenant of good faith and fair dealing. See Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (Karlton, J.) (claim for breach of the implied covenant of good faith and fair dealing requires "that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting").

    D.   Conversion

        To plead a claim for conversion, a plaintiff must allege: (1) ownership of or right to possess the property, (2) the defendant's conversion by a wrongful act or disposition of the property, and (3) damages. Appling, 745 F. Supp. 2d at 974 (citing Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221 (3d Dist. 2003)).

        In Martin v. World Savings & Loan Ass'n, 92 Cal. App. 4th 803 (2d Dist. 2001), the court held that the lender was entitled to receive and control insurance proceeds from a homeowner's earthquake insurance policy when the deed of trust stated that if the borrower obtained insurance the lender must be named as loss payee and could apply any insurance proceeds to the secured debt or to repair the property. Martin, 92 Cal. App. 4th at 805, 809; see also JEM Enters. v. Wash. Mut. Bank, F.A., 99 Cal. App. 4th 638, 646 (2d Dist. 2002) (concluding that lender "was entitled to receive and control the insurance proceeds" under provisions in deed of trust assigning the proceeds to the lender and granting it the option to use any proceeds received to repair the property, apply the funds to the secured debt, or release the funds to the owner).

1    The language in the deed of trust securing plaintiff's

2  property in this case is similar.  It requires that plaintiff

3  obtain insurance coverage for loss or damage caused by fire for

4  all buildings or other improvements on the property.  (Deed of

5  Trust § 4 ¶ 5.)  The deed of trust also requires that the

6  insurance policy include a "Standard Mortgagee Clause" and grants

7  defendant the option to control the disposition of the insurance

8  proceeds from plaintiff's hazard insurance by either directing it

9  to payment of amounts owed under the note or to plaintiff to

10  conduct repairs of the property.  (See id.)  Thus, as in Martin,

11  the deed of trust grants defendant the right to receive and

12  control the insurance proceeds.

13    In accordance with the provisions of the deed of trust,

14  plaintiff alleges that defendant was named a loss payee on the

15  hazard insurance she secured and that after the fire at the

16  property, her insurance carrier issued "a draft or check in the

17  sum of approximately $268,000 as fire insurance proceeds," which

18  named both plaintiff and defendant's predecessors in interest as

19  payees.  (Compl. ¶¶ 5, 8.)  Plaintiff then alleges that she "duly

20  endorsed said draft or check to defendant who put the proceeds

21  into an escrow account."  (Id. ¶ 9.)

22    The allegations in this case do not fit a claim for

23  conversion.  Such allegations do not indicate that plaintiff had

24  ownership of or a right to possess the insurance proceeds.

25  Rather, the terms of the deed of trust and her allegations show

26  plaintiff's consent in turning over the proceeds to defendant's

27  control.  See Bank of N.Y. v. Fremont Gen. Corp., 523 F.3d 902,

28  914 (9th Cir. 2008) ("A plaintiff in a conversion action must

1  also prove that it did not consent to the defendant's exercise of

2  dominion." (citing <u>Farrington v. A. Teichert & Son, Inc.</u>, 59 Cal.

3  App. 2d 468 (1st Dist. 1943))).  Whether defendant damaged

4  plaintiff by then using those proceeds contrary to the

5  requirements in the deed of trust is properly resolved by

6  plaintiff's breach of contract and implied covenant claims, not a

7  conversion claim.  Because plaintiff has not alleged that she had

8  the right to control the insurance proceeds or that she did not

9  grant defendant that right, she has not pled a claim for

10 conversion.  Given the terms of the deed of trust granting

11 defendant control of the proceeds, it would be futile to grant

12 plaintiff leave to attempt to do so.  Accordingly, plaintiff's

13 conversion claim must be dismissed with prejudice.[2]

14     E.   <u>Declaratory Relief</u>

15          California Code of Civil Procedure Section 1060

16 provides, in part, that a party to a contract may bring a claim

17 for "a declaration of his or her rights or duties with respect to

18 another" under that agreement.  Plaintiff requests a judicial

19 determination of the parties' rights and duties under the deed of

20 trust. (Compl. ¶ 38.)  Plaintiff specifically requests a

21 declaration that defendant was required to allow plaintiff to use

22 the fire insurance proceeds to repair or replace the modular home

23 damaged by the fire and was not entitled to retain said fire

24 insurance proceeds or apply them to the plaintiff's debt. (<u>Id.</u> ¶

25 39.)

26

27          [2]   The court does not reach defendant's statute of
28 limitations argument because it finds that plaintiff cannot state
   a claim for conversion.

1    Defendant's only ground for dismissing plaintiff's

2  claim for declaratory relief is that it "is wholly derivative of

3  non-viable causes of action." (Mem. in Supp. at 20:13-14.)

4  However, the court has found that plaintiff has stated claims for

5  breach of contract and breach of the implied covenant of good

6  faith and fair dealing. Thus, defendant's motion to dismiss

7  plaintiff's claim for declaratory relief must be denied.

8    F.   <u>Punitive and Emotional Distress Damages and Treble</u>

9         <u>Damages, Attorney's Fees, and Costs</u>

10   Plaintiff states that her claim for punitive damages is

11  only applicable to her conversion and wrongful eviction causes of

12  action.[3] (Opp'n at 13.) She states that her claim for emotional

13  distress damages stems only from her wrongful foreclosure claim

14  and that her request for treble damages is tied only to her

15  conversion claim. (<u>Id.</u> at 14.) She also states her request for

16  attorney's fees is limited to her breach of contract claim and

17  that such fees are available under California Civil Code section

18  1717. (<u>Id.</u>) Defendant has not objected to that basis for

19  attorney's fees, but rather to plaintiff's request for attorney's

20  fees and costs under California Penal Code section 496. (Mem. in

21  Supp. at 23:17-24:24.) Plaintiff has only requested attorney's

22  fees and costs pursuant to section 496 under her conversion

23  claim. (Amendment to Compl. (Docket No. 2).) Because the court

24  has dismissed plaintiff's conversion, wrongful eviction, and

25

26    [3]   As noted above, "Rule 12(f) does not authorize district
27  courts to strike claims for damages on the ground that such
    claims are precluded as a matter of law." <u>Whittlestone</u>, 618 F.3d
28  at 974-75. Regardless, the court finds defendant's motion to
    strike plaintiff's requests for damages moot.

wrongful foreclosure claims, it does not reach defendant's
request to strike plaintiff's requests for punitive and emotional
distress damages, and treble damages, attorney's fees and costs
under California Penal Code section 496.  Accordingly,
defendant's motion to strike will be denied as moot.

IT IS THEREFORE ORDERED that defendant's motion to
dismiss be, and the same hereby is, GRANTED with prejudice as to
plaintiff's claims for conversion, wrongful eviction, and
wrongful foreclosure and DENIED as to plaintiff's claim for
breach of contract and breach of the implied covenant of good
faith and fair dealing.

Defendant's motion to strike plaintiff's requests for
punitive and emotional distress damages and treble damages,
attorney's fees and costs under California Penal Code section 496
is DENIED as moot.

DATED:  May 22, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

25